No. 247070. Counsel, you may proceed. Good morning, Your Honors. Leah Yaffe with the Federal Public Defender's Office for Mr. Danny Kirby. This case stems from a tragic motorcycle accident. Mr. Kirby was driving and his girlfriend, the passenger, was killed. And Mr. Kirby was charged with involuntary manslaughter by way of Oklahoma's DUI statute. And at his trial, the jury sent a note expressing confusion about the under-the-influence element of that statute. Counsel, should we proceed on the understanding that the government isn't contesting confusion, that we can assume the jury was confused? Is that a fair? Yes. I read the government's answer brief as accepting that there was a basis for the confusion in how the statute was written and, in fact, that the jury expressed confusion. I also just think that's the obvious conclusion to draw from this question. They're specifically asking, the quote is, is it okay? Well, we don't infer confusion from any time a jury asks a question, right? I think it depends on the question that the jury is asking. Here, I think it's clear that it's... And so Bolenbach is our confusion, the Supreme Court's confusion case. Yes. That's correct. What is the duty on a court under Bolenbach? What is a court supposed to do? So when the jury asks a question about the law that they're supposed to be applying, and it appears that the jury is confused about the law, then the court has to dispel that confusion with concrete accuracy. That's the language from Bolenbach. This court has used Bolenbach in Zimmerman and Duran, so I think Zimmerman is really similar to this case. There was an apparent basis for the jury's confusion in the existing instructions themselves. The court, rather than give a clear, well-established legal answer to the jury's question, pointed back to the existing instructions packet as a whole. This court said, that didn't clear up the jury's confusion. You have to do it with concrete accuracy. There cannot remain a possibility that the jury convicted somebody on an incorrect legal basis. So I want to ask you some questions about how we should think about party presentation when it comes to the court's duty under Bolenbach. Sure. So in the district court, defense counsel presented a version of an answer that was the defense's preferred response, right? In this case. In this case. And in your appellate brief, you offer a number of ways in which the district court could have answered the jury's question. And so is it your understanding that the duty that Bolenbach speaks to just inheres in what the district court is required to do and is not at all driven by what the defense is asking or what the parties are asking the district court to do? And I guess the reason I'm asking you this is because I want to make sure I understand how to assess your argument. What are we looking at? Is the district, if you're alleging the district court or arguing the district court abused its discretion because it didn't, or erred because it didn't carry out its Bolenbach duty in general, or because it didn't give the answer to the question that the defense asked it to give? The former, although I think the defense counsel's suggestion here was good and we can go with that, but I think what a defense lawyer puts forward or what the parties say during the colloquy with the judge can impact preservation in some cases. I don't think it did here. Clearly what the defense counsel was asking was, please make it clear to the jury that mere presence of drugs is not enough to convict my client. That's not the law. Agrees to formulate a response, comes up with something that I think is an accurate statement of law and pretty clear. But the question isn't, did the defense counsel get it right? It's, did the jury get their question answered? And that's what Bolenbach requires. It requires the jury to have their confusion dispelled. And if, you know, the defense counsel had proposed something incorrect here, we might be on plain error, but that's not the case and the government certainly hasn't argued that. Is it possible in a given case, looking at the instructions of the whole, considering the record, trial evidence record, for a court to dispel jury confusion by telling them to look at the instructions again? I don't think there's a bright line rule against that. I don't know that it would ever work in a case like this one where the apparent source of the confusion is the instructions themselves. So that's very similar to Zimmerman. I think if you have a case where the jury is confused about something, it appears that the instructions fully cover this and are clear and the note doesn't indicate, you know, source of confusion, then maybe it would be enough. I don't have a... What if the district judge gets the question and thinks, well, I wonder if the jury really read the instructions as carefully as they should have. I'm going to tell them to go back and read the instructions. I'm not going to do something else. Why is that unreasonable? I think as a general matter, the cases that the circuit has, Zimmerman, Duran, say essentially you don't second guess if the jury's confusion is real confusion. It might be that there is a hypothetical case out there where you can infer pretty clearly from the record that the jury just didn't read the instructions well enough. Even if we assume that was true here though, the instructions don't answer the jury's question. Let me ask you about that. Instruction number 12, the words operating a motor vehicle under the combined influence. Why doesn't that tell the jury it had to find Mr. Kirby was impaired? Isn't under the influence the same as impaired? So the jury asked about under the influence, what does that mean? So this court has said when the jury expresses confusion about something here under the influence, under the combined influence is the same, you can't just use the same confusing term to the jury in the response. What about cope? When we said in our United States versus cope that under the influence is reasonably understood due to the ordinary meaning of the words. How should we be thinking about that here? I think we should look at what Oklahoma says the law is in this case. You have to be rendered incapable of safely driving and we know that states criminalize under the influence and define that differently. I cited a few examples in the reply brief. So when you're talking about a state DUI statute, that is a legal term of art with a different meaning and even if we could say that there was a common understanding, we're not talking about what did the judge need to do in the existing instructions packet. Once the jury has expressed confusion, whether we think as lawyers that confusion is valid or not, the judge needs to clear it away. Go ahead. Is the instruction defective under influence? And particularly in this way, you referenced the Oklahoma standard and it's certainly more clarifying what the OCCA has said than the instruction says. Sure. So the OCCA would say yes, this is defective. We haven't raised that argument on appeal. I think this is really similar to Duran where the argument on appeal was you should have answered the jury question about what agent means more clearly. That's the reason it got reversed and this court noted we're not sure the initial instruction on agent was really clear enough from the get-go, but that wasn't, that's not part of the analysis. But isn't that because of what the trial evidence showed in Duran? I mean the trial evidence in Duran implicated three possible agents and so it was confusing and one of the ways in which you could discern that was by reference to what happened at trial. I think that is part of what's going into Duran and also the court is just saying we don't think agent is a self-defining term. But that's what I'm trying to understand is how to think about what actually happened at trial here in terms of determining whether the district court fulfilled its duty under Bolenbach to do concrete accuracy, right? And if everything at trial was about whether Mr. Kirby was in fact impaired, I mean that was what the whole trial was about, how do we think about that in discerning whether telling the jury to go back to the instructions and specifically that last paragraph in the contested instruction or in the instruction that's at issue about the elements that says if you find the thing about the chemical analysis. So if you could speak to that, looking at what the trial record shows and that last piece of the instruction. Absolutely. So to the first part about what does the trial record show, the jury's instructed clearly that lawyers' argument about what is going on is not evidence and this court has reaffirmed that we don't look to what the parties argued throughout the trial to decide whether the jury had sufficient clarity in the law just recently in Kearney, I think earlier this month. So if the jury is informed that their responsibility is to follow the law as the judge instructs it, and they're confused about the instruction the judge gives them, that invokes Bolenbach and Zimmerman. We don't look and say could they have figured it out by something the parties argued during trial. With respect to the chemical analysis paragraph, I think there's two main responses here. The first is even if you read it the way that the government reads it, that's at best a clue. It doesn't clearly and concretely and with concrete accuracy dispel the jury's confusion about what the legal standard is. I also don't think that that was a fair way of reading what the jury would think about the chemical analysis paragraph. If you look at the specific language of the jury note, they equate the word impaired with unlawful with under the influence as this is the standard we're unsure about. Can you be per se impaired if there are drugs in your system is basically what the jury note is asking. Well, it seemed like the answer that the defense counsel proposed was better and then what the statute says. The statute says may render, but what you need is actually rendered. This defendant, right? And if we didn't have that last paragraph, that might make sense that there was confusion that was unanswered by referring the jury back to the instructions. But when this last paragraph clarifies and says the issue of whether the defendant's ability to drive a motor vehicle was impaired, I mean, it's focusing specifically on the defendant's impairment, which was seems to me what the jury was actually confused about. So a couple of things there. It's not listed as an element in that section. It doesn't say mere presence of drugs in your system means you're not impaired, which is how I read the jury's question. Can the mere presence of drugs in your system mean that you're impaired under Oklahoma DUI? The fact that the issue is whether the defendant is impaired doesn't dispel that confusion at all as I read it. And then just generally, I don't think it's unreasonable that the jury had this confusion here, both because as the government concedes, the statutory language, which is what's in the instructions, is awkwardly written. It's confusing. There's this weird conditional phrase. And because the evidence of actual intoxication in this case was very equivocal. Every jury could be confused by this instruction, right? I agree. And so if that's the case, that every jury can be confused by this and think that in is enough, that it's in the system is enough, you'd say we would affirm unless the jury asked the note in this case, even though the jury misconvicted. In other words, I'm wondering why this isn't a jury instruction problem rather than a Bollenbach problem. It could be both, but we've only raised the Bollenbach problem. And this Court doesn't need the first thing to get to the Bollenbach problem. So this is Zimmerman. There, the Court didn't analyze whether the existing instruction packet on its face for another jury would have been error or not. They just said, once we know that the jury is confused about this, we have to answer the question. So I think this Court could assume that this instruction would have been erroneous in another case. We don't argue that and we don't need the Court to hold that. What has to happen when the jury asks a question, they're confused. We all agree that they're confused. We know the basis for their confusion. It's the statutory language that's in the instructions. The law is very clear that the jury's confusion has to be dispelled so that there's no possibility that they're convicting under an incorrect legal basis. And I think that's just where this Court can stay. And here we have a really strong indication that that happened, which is all 12 jurors would know that there was an intoxicating substance in the defendant because of the blood alcohol and admissions. And so the only reason to ask the question, I'm kind of talking to the government here too, the only reason for asking the question is because there wasn't a full agreement on whether or not there was under the influence slash impaired. And so then the jury comes back five minutes after getting the response from the Court as I recollected. Yeah, I... And so that strongly suggests that they said, oh, well, okay, in is good enough. I 100% agree with that. And I also think that's what this Court has already said in Duran. So a jury's question indicates that at least one juror thinks this is important and has this confusion. But you didn't, just to clarify, you don't contend in this appeal that this instruction misstates the law, right? We just haven't raised that as an appellate issue. It's not an issue. If this is not, if we're not going to look at this as a jury instruction case, an ordinary jury instruction case, because that's not how you litigated it, what relevance are these first principles that we go to in jury instruction cases where we look at all the instructions to see what the jury was, how the jury understood the law? We assume the jury read the instructions. Are those principles relevant to our disposition of the Blumenbach question? I think they can be relevant. It's not how this Court goes about the analysis in Zimmerman and Duran. Just look at the question, look at the answer. Did this clear away the confusion? I don't think there's any reason this Court can't look to the packet of instructions when the judge's response was to look at the packet of instructions. But I don't think that you can say anything in these instructions concretely cleared away the jury's confusion in this case. I have one other instruction. I was meaning to add that to instruction 12. 13, which in part refers to the issue of whether the defendant's ability to drive a motor vehicle was impaired. What if they went back and read that one? Why wouldn't that potentially clear up the confusion? And I just want to make sure Your Honor was referring to the chemical analysis paragraph, by the way. Well, I'm at 13. Yeah, I have it. So this, again, I read the jury's question. Well, the jury's question says, is it enough to convict Mr. Kirby, basically, for the mere presence of drugs? Like, is that enough to find him impaired? They use the word impaired. Is it enough to find him unlawful? They use the word unlawful, just the same as impaired. They're essentially asking, can somebody be considered impaired per se because they have substances in their system? So they read this part of the jury instructions, and that's their understanding of impaired. It doesn't answer the question at all. Even if my reading is incorrect, this is not an answer to the question. This element does not mean that you can convict him because there are drugs in his system. What if the judge had said, I think the jury instructions on this are enough for you. I would like you to go back and look at them again, and if you're still confused, you can come back and ask for clarification. What about that scenario? Two points there. I don't know if that would be best practice, but then if the jury— I didn't say it was best practice. I'm just saying, what if the judge had done that? I think we'd have to see if the jury asks a follow-up question there, but it reminds me of a really key point here, which is the district court isn't doing that in this case. In fact, the exact tension that we're talking about here of whether which may render means the same thing as actually rendered someone incapable of safely driving, this came up explicitly to the district judge. As the government notes, he was uncomfortable with the defense counsel's accurate statement of law because the court wasn't sure about the law, and rather than determine that, he left that legal ambiguity to the jury. Was it an accurate statement of law? Yes. Why? Using different statutory language. Because in Braeger, the OCCA case, they said that the definitional standard for Oklahoma DUI is that you're rendered incapable of safely driving, which is exactly what the defense counsel asked the court to say to the jury in this case. I'm aware I'm out of time, so we'd ask for a reversal and a new trial. Thank you. Thank you, counsel. May it please the Court, my name is Linda Epperle. I'm an assistant United States attorney and I represent the United States in this matter. Your Honor, this is a case where an experienced jurist looked at a packet of instructions, sent the jury off. The jury comes back with two notes, the first of which got off into negligence, gross negligence, et cetera. Every question the jury asked in that first note, the court accurately responded to by saying, I define negligence. The instructions define gross negligence. Basically, go back and read the instructions. With that as a backdrop, the court then receives the note that is at issue here, in which the jury asked, when stating under the influence, does this mean as long as it's in his system it is unlawful, or do we need to determine if he was affected by the substances or impaired to be unlawful? This is not a case where the court made an arbitrary, capricious, or whimsical response. Well, to determine whether that's so, we're looking at Bolenbach, you agree, right? That's our case, the jury confusion case that applies. That is the overall case. Yeah, that's the overall case, which requires a district court to respond with concrete accuracy, right? Correct. And dispel the jury's confusion with concrete accuracy. How does a court fulfill its duty under Bolenbach to clear away jury confusion with concrete accuracy by referring the jury back to instructions that were confusing to the jury in the first place? It's this loop. Maybe in some cases, but why here? Why here should we say the court fulfilled its duty under Bolenbach by referring the jury back to the instructions? For several reasons, Your Honor. First of all, I think that the phrase from Bolenbach of defining something with clear accuracy for the jury, or complete accuracy, I don't see, I don't read that as saying that the government has the responsibility to provide the most comprehensive instruction possible. I think that it has to be read in light of the facts in Bolenbach where the court actually issued a wrong instruction. The Supreme Court indicated that they believed that the answer the court gave was palpably incorrect and just flat wrong. That's not what we have here. We further would direct the court's attention to the recent decisions of this case in Woodmore, which indicated that the court need not go further and define terms that have an ordinary meaning, where a definition would insert more questions by adopting a more technical look at the jury's question. The court is not required to do so. Secondly, in the Murray case, this court indicated that a clearer understanding of the issues is not the response that the trial court is to pursue. So is it the government's position that so long as there's no dispute that the instructions don't misstate the law, the instructions are correct, then it's always appropriate to resolve jury confusion by just referring the jury back to the instructions? Is that the government's position? No, the government's position is not that that is always appropriate. I can certainly think of examples where simply on a snap decision saying go back and read the instructions would be arbitrary, capricious, or whimsical, but that is not what happened here. Here the judge took several pages of the transcript to discuss this matter in a thoughtful way with both counsel, took time to offer the defense an opportunity to present a proposed definition if they wanted a definition of DUI, and then engaged in more discussion with the party. So this is not a judge who made a snap decision off the hip, but a judge who went through a reasonable process. Well, talking about the defendant here and the conviction, do you agree that there is a very realistic possibility, if not probability, that the jury convicted here on the basis of an intoxicant in the system, in this person's system? I would agree it is a closer case than we would normally see because I think in most DUI cases we have a BAC content that puts it over the edge. If you don't want to answer it, say I don't want to answer it, but the question is, do you agree that there is a realistic possibility, if not probability, that the jury convicted on this person having the intoxicant in the system rather than the person being impaired? My reason for that, I kind of gave you a preview, is all 12 jurors knew that this person had alcohol and other substances in his body. So no need for a note on that. But they sent a note on, tell us which one we have to have, and if all of them agreed that the person were impaired, there would be no reason to send a note, be convicted under either one of those. So by sending the note, doesn't that tell us that at least one and maybe more jurors were like, I'm not convicting until I find out whether or not he has to be impaired. And then when it comes back to the jury, my recollection, if I'm mistaken, correct me because it's dim, but five minutes later the jury convicts. And should I not be very concerned that we have a wrongly convicted person here? No, Your Honor. For two reasons. First of all, if the jury went back and then re-looked at the instructions as they had been told to do, as Judge Matheson was stating in instruction number 13, they are specifically told that there's got to be impairment. And secondly, it's not . . . There's a lot of chaff before you get to the wheat. I mean, you can pick and you can say the word impaired is used in that sentence. And so surely the jury must have known that there had to be impaired. But this language is so awful. And as far as the which, when you pick up with the which, and any other intoxicating substance, no comma, which, so we got a relative pronoun there, needs an antecedent, which is controlled substance, I think, may render any person incapable of safely driving. That means the intoxicant can do that. The jury can't use any sort of a substance that doesn't intoxicate and render someone. In other words, if you got any grammarians on the jury, then that person is instantly confused by that language. But short of going through a grammarical exercise and an answer in return, which might be more confusing to the jury, will the courts . . . The EPA has given a very lucid sentence on what it takes to be convicted here that clearly tells the jury or reader that there has to be impairment that made the difference, that caused the death. The government, first of all, the government does not admit that the Oklahoma law is horrible or that in the end, after consideration, is confusing. I think that we introduce the phrases that are quoted back to us today as simply explanatory phrases in order to get into an argument. So we've not made that concession. Well, you don't disagree that the jury was confused, right? You don't disagree the jury was confused here. You conceded that, it seems, from your briefing. At least one juror wanted more clarification. I mean, you say that your instructions were confusing. A clarifying instruction might have been helpful. The jury, in fact, experienced confusion. I mean, this is all in your brief. So I'm asking you this because it attends to our point of departure for doing the Bolenbach analysis here. Are we spotting jury confusion? It seems like we are. You've conceded it. Again, I think that this goes toward, is there confusion because they have not clearly read the instructions as in the first jury note? Or is there confusion because the Oklahoma statute itself is confusing? At which point, you give a definition. I think the important qualifier on all of that, though, is that when the defense was offered the opportunity to present a definition, they did not present the definition that has been written by the Oklahoma Court of Criminals. Well, that goes back to my question to Appellant's counsel. That how much should we be thinking about preservation or party presentation when it comes to how a district court accomplishes its duty under Bolenbach? Because it seems like to the extent waiver principles of any kind would apply, you've waived them because you haven't insisted that we're confined to looking just at what the defense counsel presented to the district court. You respond to Appellant's suggestions about what else the court may have considered doing on its own. I agree that we have discussed issues with the defense instruction. To the extent that the court is asking me to address a similar question posed to opposing counsel about whether or not looking at that definition sort of as a matter of law from the outset was waived by their failure to argue it here. If that is what the court is arguing, we would agree that this is not a case where this court is looking at is that instruction necessary in order to sustain any conviction. If so, we would have had an instruction question as part of this appeal, and we don't. That was waived. So we only have to look at that in the context of this note of potential jury confusion. At that point, I'd like to turn to hearing your views on if there was error or whether it was harmless. First of all, if there was error, is the burden on the government to show harmlessness beyond a reasonable doubt, and whether it's reasonable doubt or preponderance, how have you shown that, again, assuming error, that it was harmless? I appreciate the question, Your Honor. And in addressing harmless error, I hopefully will get back to some of the things that I didn't mean to be dodging your question about, Judge Phillips was saying, was it just the intoxicant itself. We believe that it was intoxicant, plus the evidence that I'll discuss in a moment. We would agree that harmless error requires the government to show beyond a reasonable doubt, that but for that error, the result would have been different. So you're saying constitutional error. That's the only time you have to do it beyond a reasonable doubt, isn't it? Then perhaps I am mistaken, Your Honor, because I do believe that the, at least the State of Oklahoma in their evaluation of this kind of issue has said that the instruction itself is not a constitutional error. It depends. And the government is. It depends on the case. You cite Freeman, and there we have omitted instructions or elements, I should say, or neither. There's an element that is not included, and then we evaluate. Is the evidence so overwhelming that it's beyond a reasonable doubt? But this one I'm not so sure is that. It's, this is a case that initially when I began looking at it to argue, seemed like it should be clear cut. And I would agree. The further I get into it, the more confused I get. But in this case, there are facts under either one of those sufficient to support the jury's verdict. But harmlessness is not about sufficiency, is it? Excuse me, Your Honor. Harmlessness is not about the sufficiency of the evidence. No, we'd need to show, if we have to show beyond a reasonable doubt, it would have to be overwhelming. But we believe that it is here, based upon the troopers who saw independent, objective, bodily sensations from this defendant that indicated that there was intoxication. We had a nurse at the hospital sometime later in a whole other town. The sufficiency of the evidence is not how we're doing harmless error review, right? I mean, we're looking at whether the confusion about the legal standard explains the jury verdict or not. I mean, assuming the jury was confused about the legal standard and you don't prevail on error, then don't we ask whether that's why or that's how we understand why the verdict we got was actually rendered? Is it attributable to the error or not? I think that the way the court could look at this is to look at the instruction that was suggested. I guess you could look at the instruction that the Oklahoma court suggests, but you could also look at the one suggested by defendant and require or request and figure out whether, if that instruction had been given, have we proved overwhelmingly that the result would have been the same. And here, based upon the testimony of the troopers, the nurse at the hospital, the experts who talked about the impact that those kind of chemicals would have on anyone, particularly when it's combined with things like oxycodone. Do you agree that it's the government's burden to establish harmless error? Yes. Right. I agree with you. These are challenging cases, especially this intersection of jury confusion cases or jury instructional error cases. But it's important that the government carries its burden by positing for us what the standard is. And I don't see that you have done that. Tell me why I'm wrong. The standard here, as shown by the district court, and I see I'm out of time. Would you like me to continue briefly? The standard here is that there is actual impairment. In other words, there was an issue of whether defendant's ability to drive a motor vehicle was impaired. They were told that in Instruction 13, and we have no argument with that. If that is the case, then I believe that we are showing even if that instruction had been given, would the jury have reached the same verdict? And here they would have for the factual reasons that are present in the record. We'd note that state and federal law allows harmless error in such cases. And I also would go back to where I began, which is a trial judge who has gone through, attempted to go through a reasoned response with the jury, and based upon all the circumstances before it, including the first note, has determined that the correct response in order to avoid error and giving a palpably incorrect answer, or creating more confusion for the jury, was simply to say, please go back and read the instructions. They did, and they came back with a verdict. We'd ask you to affirm. Thank you, counsel. I think we're out of time, so we'll consider this case submitted. Counsel may be excused, and the court will stand in recess until September 24 in Laramie, Wyoming. Am I right about that, Judge Phillips? Very right. All right, thank you.